NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE ABEL FIERRO, <br><br>       Plaintiff-Appellee, <br><br>  v. <br><br> KEITH SMITH, Security Operations Administrator at Phoenix Division Director's Office; et al., <br><br>       Defendants-Appellants. | No.   17-15288 <br><br> D.C. No. <br> 2:13-cv-02173-JJT-BSB <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Paul G. Rosenblatt, District Judge, Presiding

Argued and Submitted April 9, 2018
Pasadena, California

Before: BEA and MURGUIA, Circuit Judges, and KEELEY,[**] District Judge.

Defendants-Appellants are prison officials in the Arizona State Prison

Complex ("ASPC") who appeal the district court's decision denying them

qualified immunity from plaintiff-appellee Jose Fierro's Eighth Amendment

---

  [*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

  [**]   The Honorable Irene M. Keeley, United States District Judge for the Northern District of West Virginia, sitting by designation.

claims. Fierro claims that defendants-appellants, including Protective Custody

Administrator Marlene Coffey, Security Operations Administrator Smith, Deputy

Warden Ochoa, Deputy Warden Sanders, Deputy Warden Pruett, and Deputy

Warden Forester (collectively, "defendants"), violated his Eighth Amendment

rights by denying his requests for protective custody ("PC") six times between

2011 and 2013.[1] After each PC request, Defendants recommended alternative

placement, wherein Fierro was moved from unit to unit within the general

population in the ASPC. Fierro claimed throughout that time that he faced a

statewide threat from the Border Brothers prison gang, who have members in each

of the prison units in the ASPC, and that he was therefore in danger in any general

population unity within the ASPC. Shortly after his sixth request for PC was

denied, Fierro was seriously assaulted by another prison inmate. Defendants all

were involved in the review process for Fierro's PC requests at various points

---

[1]     Fierro also has filed a motion asking the court to take judicial notice of two copies of the Arizona Department of Corrections Department Order 801 (Inmate Classification), effective February 25, 2010 and July 21, 2017. Defendants do not oppose Fierro's motion. "The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. This can include records of a state agency. *See City of Sausalito v. O'Neil*, 386 F.3d 1186, 1123 n.2 (9th Cir. 2004). Because Fierro's motion is unopposed, and the facts in the documents appear to be records about a state agency's inmate classification procedures not subject to reasonable dispute, we grant Fierro's motion (Doc. 18).

during the relevant time period. Fierro claims that each of defendant-appellees were subjectively and objectively aware of the substantial danger Fierro faced in the general prison population, but nevertheless deliberately ignored that danger.

We review a district court's decision denying summary judgment based on qualified immunity de novo, accepting facts and reasonable inferences in the light most favorable to plaintiff. *See Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 959 (9th Cir. 2010).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotation marks omitted)). To determine whether an official is entitled to qualified immunity, the court must decide whether the facts that plaintiff has alleged make out a violation of a constitutional right. *Pearson*, 555 U.S. at 232. If, taking the facts and inferences in the light most favorable to plaintiff, plaintiff has alleged violation of a constitutional right, the court must decide whether the right at issue was "clearly established at the time of defendant's alleged misconduct." *Id.* (internal quotation marks omitted). Courts may exercise their discretion in deciding which of the two qualified immunity prongs should be addressed first "in light of the circumstances

of the particular case at hand." *Id.* at 236.

The Supreme Court has interpreted the Eighth Amendment to require prison officials to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks omitted). A prison official may be "held liable under the Eighth Amendment" if the official knows that an inmate "face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. Breaking down the standard into a two part test, a prison official violates the Eighth Amendment if, (1) "objectively viewed, the prison official's act or omission [causes] 'a substantial risk of serious harm,'" *Cortez v. Skol,* 776 F.3d 1046, 1050 (9th Cir. 2015) (quoting *Farmer*, 511 U.S. at 834); and (2) the official is subjectively aware of that risk and acts with "'deliberate indifference to inmate health or safety.'" *Id.*

Because fellow inmates eventually assaulted Fierro, defendants do not contest that objectively their decision to grant alternative placement in lieu of PC caused Fierro to be at substantial risk of serious harm. Instead, defendants each argue that because they followed ASPC procedures by reviewing Fierro's claims and concluding that alternative placement was warranted, they were not subjectively aware of the risk to Fierro, and therefore, did not act with deliberate indifference to his safety. We review each defendant's eligibility for qualified

immunity separately. *See Cunningham v. Gates*, 229 F.3d 1271, 1287 (9th Cir. 2000).

1. Deputy Warden Ochoa was involved in reviewing only Fierro's second PC request, which Fierro made on March 11, 2012. Nevertheless, there is evidence in the record from which a jury could infer that Ochoa believed there to be a state-wide threat to Fierro but was nevertheless deliberately indifferent to it. Fierro's second PC request followed Fierro's report that unknown inmates, both members of the "Border Brothers" prison gang, entered his cell, assaulted him, and stole some of his belongings, all on the orders of the Border Brother's leader. As part of ASPC procedures, Ochoa was required to review Fierro's PC packet, which included Fierro's first PC request following an altercation with his cellmate, also a Border Brothers member, who accused Fierro of being a rat and a snitch. Ochoa reviewed Fierro's second PC request and recommended alternative placement in lieu of PC. The Protective Segregation Decision Worksheet, which describes the reasons for the alternative placement, states that Fierro "did not claim that he acted as an informant in the past or provide any reason why others might think he is a 'snitch.'" This statement is inaccurate, as Fierro had pointed specifically to his first PC request as the reason to the attack on him, and thus provided a "reason why others might think he is a 'snitch.'" Taking the facts and inferences in the light most favorable to Fierro, a jury thus could be permitted to disbelieve Ochoa's

5

claim that she did not subjectively believe that Ochoa faced a substantial risk of serious harm. A jury therefore could infer that Ochoa knew that Fierro faced a substantial risk of serious harm, and, by recommending alternative placement in lieu of PC, failed to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 832–34.

2. Deputy Warden Sanders, Protective Custody Administrator Coffey, Security Operations Administrator Smith, and Deputy Warden Pruett, each were involved in denying Fierro's third, fourth, fifth, or sixth PC requests on the grounds that the threats Fierro reported were unsubstantiated. However, nowhere in Fierro's PC file do these defendants provide an affirmative statement explaining their reasons for determining that Fierro's threats were unsubstantiated, despite instructions on the PC worksheet to do so. Additionally, the PC documents prepared after Fierro's third, fourth, fifth, and sixth requests reflect that not all suspects involved in the reported threats had been interviewed. This missing information contradicts the defendants' claims that they followed ASPC regulations. Further, in an internal prison email following Fierro's seventh request for PC, the Central Office of Arizona State Prison notes that there is "not any documentation . . . which indicates Fierro's statements [about being targeted by the Border Brothers] have been checked out and either confirmed or not confirmed." Moreover, that Deputy Warden Schuster had recommended PC after Fierro's third

6

request belies Sanders', Coffey's, Smith's, and Pruett's purported belief that the risk to Fierro was unsubstantiated. Taking the facts and inferences in the light most favorable to Fierro, the remaining defendants Sanders, Coffey, Smith, and Pruett, knew that Fierro faced a substantial risk of serious harm, and by repeatedly recommending alternative placement in lieu of PC, failed to take reasonable measures to abate it. *See Farmer*, 511 U.S. at 832–34.

Because we conclude that the law requiring prison officials to take reasonable measures to abate an inmate's substantial risk of serious harm from other inmates clearly was established when Fierro made his PC requests, *see Farmer*, 511 U.S. at 842–43, defendants are not entitled to qualified immunity from Fierro's Eighth Amendment claims.

**AFFIRMED.**